**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chad Carpenter, an individual, | No. CV16-01768-PHX DGC |
| Plaintiff/Defendant, | **ORDER** |
| v. | |
| All American Games, a limited liability company, Douglas Berman, an individual, and Does 1-30, inclusive, | |
| Defendants/Counterclaimants | |

On September 27, 2016, Defendants All American Games ("AAG") and Douglas Berman filed an amended counterclaim against Plaintiff Chad Carpenter. Doc. 20. Plaintiff filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 25. Defendants filed a response (Doc. 26), and Plaintiff did not reply. Neither party has requested oral argument. For the reasons set forth below, the Court will deny the motion.

## I.    Background.

The Court takes the allegations of Defendants' counterclaim as true for purposes of a motion to dismiss. Defendants, through a wholly owned subsidiary, Football University, LLC ("FBU"), operate a national football tournament for youth football players ("FBU tournament"). Doc. 20, ¶ 4. Defendants also operate football camps throughout the United States, including in Phoenix, Seattle, and various cities in

California.  *Id.*  Plaintiff is a former employee of Defendants.  *Id.*  He worked as a "regional player representative in the western region" and was "responsible for assisting in recruiting athletes to attend [the camps] and recruiting teams to participate in the [FBU tournament]."  *Id.*, ¶ 5.  Plaintiff began his affiliation with Defendants as a coach at the camps in 2010.  *Id.*, ¶ 6. Plaintiff became a full time employee in September 2012, making a base salary of $65,000 and receiving commissions based on camp revenues and payments from FBU tournament participation.  *Id.,* ¶ 6.  Prior to June 2015, Defendant paid Plaintiff two commissions: $7,500 as payment for his work on the 2014 FBU tournament, and $3,110 as payment for his promotional activities for the 2015 FBU camps in his region.  *Id.*  There is a factual dispute between the parties about whether additional commissions are due.  Doc. 25, at 4; Doc. 26 at 5-6.

In May 2015, Defendants discovered a "troubling and improper relationship between Plaintiff and another former employee."  Doc. 20, ¶ 7.  According to Defendants, this former employee was manipulating "[Defendants'] financial systems to inflate the revenue numbers for the FBU regional camps being held in Phoenix, Seattle and California."  *Id.*, ¶ 8.  Following the former employee's termination on June 2, 2015, Defendants discovered "considerable evidence that Plaintiff was fully knowledgeable of the fraudulent actions of the dismissed former employee."  *Id.*, ¶¶ 9-10.  Defendants' investigation revealed that "Plaintiff extended reduced pricing to customers that were unauthorized by AAG in order to inflate the revenue numbers for those camps," and that Plaintiff had acted with "gross insubordination with respect to his supervisor."  *Id.*, ¶¶ 11-12.  Within days of the first employee's termination, Defendants terminated Plaintiff.  *Id.*, ¶ 13; Doc. 1, ¶ 13.

Plaintiff contends that, after his termination, Defendants sent an e-mail regarding his termination to over 200 employees and outside affiliates, calling into question his character, jeopardizing his future employment, and potentially making him "untouchable" as a coach.  Doc. 1, ¶ 13.  Plaintiff sued Defendants for defamation, unpaid wages, unjust enrichment, and breach of contract.  Doc. 1.  Defendants' amended

1    counterclaim followed, alleging breach of contract, unjust enrichment, breach of implied

2    covenant, breach of fiduciary duty of good faith and loyalty to AAG, and conversion.

3    Doc. 20 at 10-14.

4    **II.    Legal Standard.**

5         A successful motion to dismiss under Rule 12(b)(6) must show either that the

6    complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its

7    theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A

8    complaint that sets forth a cognizable legal theory will survive a motion to dismiss as

9    long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief

10   that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

11   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when "the

12   plaintiff pleads factual content that allows the court to draw the reasonable inference that

13   the defendant is liable for the misconduct alleged."  *Id.*, 556 U.S. at 678 (citing *Twombly*,

14   550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,'

15   but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

16   (citing *Twombly*, 550 U.S. at 556).  Arizona law governs Defendants' state law claims.

17   *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1996).

18   **III.   Defendants' Motion to Dismiss.**

19        **A.    Breach of Contract.**

20        Plaintiff argues that Defendants' amended counterclaim recites only legal

21   conclusions and fails to plead sufficient factual allegations that, if true, would state a

22   cause of action for breach of contract.  Doc. 25 at 2.  The elements of a breach of contract

23   claim are the existence of a contract, breach, and resulting damages.  *Thomas v.*

24   *Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013).  Defendants' counterclaim

25   alleges that Plaintiff became a full-time employee in September 2012, and that his salary

26   and commissions were contingent upon his responsibilities as a player representative and

27   recruiter.  Doc. 20, ¶¶ 5-6.  Defendants contend that Plaintiff breached his employment

28   contract by "[s]pecifically and without limitation fail[ing] to follow FBU procedures with

regard to billing and pricing for camps, which were Plaintiff's job responsibilities pursuant to his Agreement with AAG." *Id.*, ¶ 20.  Specifically, Defendants allege that Plaintiff failed to follow FBU procedures regarding billing and pricing by extending unauthorized discounts to certain AAG customers to inflate the revenue figures for his camps, causing Defendants both financial and reputational damage. *Id.*, ¶¶ 11, 20, 22. Defendants also assert that Plaintiff's alleged insubordination was in violation of FBU policies and procedures. *Id.*, ¶ 20.  These allegations provide a sufficient factual basis to support the claim for breach of contract.

Plaintiff also argues that Defendants' amended counterclaim only cites "conduct by a third party employee and fails to establish any facts related to the duties of an agreement or the breach of those duties by Plaintiff." Doc. 25 at 3.  To the contrary, Defendants have pled when the employment relationship began with Plaintiff, when and how they discovered his failure to comply with billing and pricing policies and procedures, and the injury Plaintiff's conduct has caused them.  Although Defendants do allege that Plaintiff was aware of the former employee's fraudulent actions (Doc. 20, ¶¶ 7-10), the Court need not decide if that factual allegation alone is sufficient because it is not the sole allegation upon which Defendants' breach of contract claim depends. Defendants have pled sufficient facts to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

**B.     Unjust Enrichment.**

A party is unjustly enriched when it "has and retains money or benefits which in justice and equity belong to another." *City of Sierra Vista v. Cochise Enters., Inc*., 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984).  The five elements of unjust enrichment are "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment, and (5) an absence of a remedy provided by law." *Id.*  Plaintiff argues that Defendants have not pled sufficient facts as to elements 1-4.  Doc. 25 at 4.  The Court disagrees.

Defendants allege that Plaintiff was enriched by accepting his salary and commissions, resulting in an impoverishment to Defendants, because Plaintiff did not perform his obligations and responsibilities according to AAG policies and procedures. Doc. 20, ¶¶ 23-25.  If Defendants' allegations are true, then Plaintiff's acceptance of salary and commissions based on inflated revenues and unauthorized discounts reasonably suggests that Defendant was impoverished, Plaintiff was enriched, and there was a connection between and absence of justification for both elements.

Plaintiff also argues that Defendants have not alleged a lack of legal remedy under the fifth element, and that Defendants have an adequate legal remedy in their breach of contract claim.  Doc. 25 at 5.  But Defendants can plead alternative legal theories, Fed. R. Civ. P. 8(a)(3), and need not include the words "in the alternative," *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003).  Further, "[t]he mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery. A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already received the benefit of [his] contractual bargain." *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000).

**C.     Breach of Implied Covenant.**

Plaintiff argues that Defendants fail to allege sufficient facts to establish a fiduciary relationship between Defendants and Plaintiff as an element of their breach of implied covenant claim.  Doc. 25 at 5.  But under Arizona law, every contract "implies a covenant of good faith and fair dealing." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).  The implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement. The duty arises by operation of law but exists by virtue of a contractual relationship." *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 29 (Ariz. 2002).

A plaintiff may sue for breach of the implied covenant in contract or tort. *Rawlings*, 726 P.2d at 574. To bring a tortious breach of implied covenant claim, the parties must have a "special relationship . . . arising from elements of public interest, adhesion, and fiduciary responsibility." *Wells Fargo*, 38 P.3d at 29 (quoting *Burkons v. Ticor Title Ins. Co. of California*, 813 P.2d 710, 721 (Ariz. 1991)). If a plaintiff pursues recovery only in contract, however, he need not establish the special relationship required for a tort claim. *Wells Fargo*, 38 P.3d at 29.

Plaintiff's attack on the sufficiency of Defendants' alleged "special relationship" seems to assume that Defendants seek recovery in tort. Doc. 25 at 5-6; Doc. 20 at 12. But Defendants may assert breach of the implied covenant in contract. Although Defendants do refer to the parties' relationship as a "special relationship" (Doc. 20, ¶ 28), Defendants simply allege that an implied covenant arose from Plaintiff's employment (*id.* at 12). Defendants allege that Plaintiff breached the covenant by failing to follow camp pricing policies and procedures, specifically by offering unauthorized discounts to inflate his camp revenues and increase his commissions. *Id.* If those allegations are true, they may well constitute breach of the implied covenant to fulfill his employment contract fairly and in good faith.

Defendants may later argue that Plaintiff's relationship with them rose to the level of a special relationship, allowing them to recover in tort. Under Arizona law, an employee owes his employer a fiduciary duty. *McCallister Co. v. Kastella*, 825 P.2d 980, 982 (Ariz. Ct. App. 1992) (citing *Mallamo v. Hartman*, 219 P.2d 1039, 1041 (Ariz. 1950) ("in Arizona, an employee/agent owes his or her employer/principal a fiduciary duty.")). A special relationship may arise from fiduciary responsibility. *Wells Fargo,* 38 P.3d at 29. The Court need not determine now whether Defendants can establish a special relationship for purposes of tort damages. Defendants allege that Plaintiff breached the implied covenant, and that his breach deprived them of the benefits of the bargain. These factual allegations, if true, are sufficient to sustain Defendants' claim for breach of implied covenant.

Relying on the memorandum decision in *Harris v. Superior Court of Arizona ex rel. Cty. of Maricopa,* 278 Fed. Appx. 719, 721 (9th Cir. 2008), Plaintiff argues that tortious bad faith claims cannot arise out of employment contracts (Doc 25 at 2). The Court disagrees. *Harris* upheld summary judgment for defendant employers, stating that "defendants did not breach the covenant of good faith and fair dealing because Harris was terminated for 'good cause.'" *Harris*, 278 Fed. Appx. at 721. *Harris* cites Arizona cases for the proposition that an employer does not breach the implied covenant by terminating an employee for good cause or no cause, whether the employee is an at-will employee or employed by contract, unless a public policy is violated. *Id.* (citing *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1041 (1985); *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1385 (Ariz. Ct. App. 1994)). Defendants' claim is based on Plaintiff's alleged non-performance and failure to comply with the terms of his employment; *Harris* and the cases it cites would govern if Plaintiff claimed that Defendants breached the implied covenant by terminating his employment. *Harris* is inapposite to Defendants' claim.

**D.     Breach of Fiduciary Duty.**

Plaintiff argues that Defendants' counterclaim does not allege facts to establish a fiduciary relationship between Plaintiff and Defendants. The Court disagrees.

As discussed above, Arizona provides that an employee owes a fiduciary duty to his employer. *McCallister*, 825 P.2d at 982. Defendants allege that Plaintiff owed fiduciary duties to AAG, as well as duties of loyalty and good faith. Doc. 20, ¶¶ 31-35. Specifically, Defendants argue these duties included the duty "to follow AAG's rules and procedures" and "to not interfere with AAG's existing and potential business relationships." *Id.*, ¶ 33. Defendants allege that Plaintiff extended unauthorized discounts to AAG clients to inflate his own revenue numbers, and that Plaintiff was aware of the former employee's fraudulent manipulation of AAG's financial systems to inflate Plaintiff's commissions. *Id.*, ¶¶ 10-11, 31-35. Defendants assert that by engaging in these activities, Plaintiff breached his duties to Defendants. *Id.*, ¶ 35. If Plaintiff was

aware of another employee's fraudulent scheme to inflate his commissions, and if Plaintiff extended unauthorized discounts to inflate his own revenue numbers, the Court reasonably can infer that Plaintiff breached his fiduciary duties of good faith and loyalty to Defendants.

**E.     Conversion.**

Plaintiff argues that Defendants' amended counterclaim fails to allege facts that, if true, would state a cause of action for conversion.  Plaintiff argues that Defendants state only legal conclusions, and that Plaintiff's alleged misappropriation of assets is an insufficient basis for a claim of conversion under Arizona law.  Doc. 25 at 7.

Conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another."  *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990)).  "While a conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, money can be the subject of a conversion claim if the money 'can be described, identified or segregated, and an obligation to treat it in a specific manner is established.'"  *Id.* (quoting *Autoville, Inc. v. Friedman*, 510 P.2d 400, 403 (Ariz. Ct. App. 1973) (citations omitted)).

Defendants allege that Plaintiff misappropriated assets by "offering discounted rates to FBU camp attendees in violation of AAG policies and [that] Plaintiff was involved in an inflated revenue scheme that created false revenues for commission purposes for the Plaintiff."  Doc. 20, ¶¶ 37-39.  Depriving Defendants of their revenue is not tantamount to Plaintiff's collecting of a debt.  Defendants' allegations, if true, would show that Plaintiff exercised wrongful control over their revenue.

Arizona law instructs that money can be the subject of conversion if it "can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Autoville Inc.*, 510 P.2d at 403.  Defendants will be required to satisfy this requirement to the extent their conversion claim is based on money.  For purposes of Plaintiff's motion, however, Defendants have pled a sufficient claim.

**IT IS ORDERED** that Plaintiff's motion to dismiss (Doc. 25) is **denied**.

Dated this 30th day of January, 2017.

_____
David G. Campbell
United States District Judge